# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DIETRA BATISE, o/b/o T.M.B (minor),** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **NANCY A. BERRYHILL,** ) <br> **Acting Commissioner of the** ) <br> **Social Security Administration,** ) <br> ) <br> **Defendant.** ) | Case No. CIV-16-904-CG |

## OPINION AND ORDER

Plaintiff Dietra Batise brings this action on behalf of her minor son, T.M.B., pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application, based on T.M.B.'s alleged disability, for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. No. 13. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R.__").[1] The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, the Court reverses the Commissioner's decision and remands for further proceedings.

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

PROCEDURAL HISTORY

T.M.B. was born on December 30, 2005. R. 155. Plaintiff protectively filed an application for SSI on September 21, 2012, which was ultimately alleged to be the disability onset date. R. 34, 136-41, 155-64. Following denial of the application initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing. R. 30-60, 61-85, 90-93. The ALJ issued an unfavorable decision on January 30, 2015. R. 12-25. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 4-6; *see also* 20 C.F.R. § 416.1481. Plaintiff then filed this action for judicial review.

THE ADMINISTRATIVE DECISION

As relevant here, "[a]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner uses a three-step sequential evaluation process to determine a minor child's entitlement to disability benefits. *See* 20 C.F.R. § 416.924(a). At step one, the ALJ found that T.M.B. had not engaged in substantial gainful activity since the date the application was filed. R. 15. At step two, the ALJ found that T.M.B. has the severe impairments of dysfunction of Eustachian tube with left-ear hearing loss; speech and language impairment; and borderline intellectual functioning. R. 15.

At step three, the ALJ found that T.M.B. did not have an impairment or combination of impairments that met or medically equaled any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 15-16. The ALJ then considered T.M.B.'s ability to function in the six domains set forth in the regulations. R. at 16-24; *see* 20 C.F.R. §§ 416.924(d), .926a. Specifically, the ALJ assessed T.M.B.'s functioning as follows:

| Domain | Limitation |
|---|---|
| Acquiring and Using Information: | Marked limitation |
| Attending and Completing Tasks: | Less than marked limitation |
| Interacting/Relating with Others: | Less than marked limitation |
| Moving About/Manipulating Objects: | No limitation |
| Caring for Yourself: | No limitation |
| Health and Physical Well-Being: | No limitation |

R. 19-24. Because a finding that a child's limitations functionally equal the Listings requires a marked limitation in two or more domains, or an extreme limitation in one domain, the ALJ determined that T.M.B. did not have an impairment or combination of impairments that functionally equaled any of the Listings. R. 24; *see* 20 C.F.R. § 416.926a(a).

Based on his step-three finding, the ALJ concluded that T.M.B. had not been under a disability, as defined in the Social Security Act, since September 21, 2012. R. 24. Accordingly, Plaintiff's application for SSI was denied. R. 25.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUE ON APPEAL

Plaintiff contends that the ALJ's step-three finding that T.M.B. has less than marked limitation in the domain of Attending and Completing Tasks is not supported by substantial evidence. Pl.'s Br. (Doc. No. 15) at 14-18.

ANALYSIS

The ALJ found that T.M.B. "has less than marked limitation in attending and completing tasks," and explained his analysis as follows:

> As to the claimant's degree of limitation in this domain, the undersigned concurs with and adopts the findings and opinions of Dr. LaCroix, Dr. Hartley, Dr. Smith, and Dr. Holloway, as set forth in the record, as per their rationale therein set forth (Exhibits 2A; 4A). In November 2012, his teacher opined he was average at following oral instructions; however, in September 2013, Dr. Coyle noted the claimant had poor attention and concentration (Exhibits 6E; 8F).

R. 20-21.

1. <u>Report of average ability to follow instructions</u>

The ALJ cites the opinion of T.M.B.'s teacher that T.M.B. "was average at following oral instructions." R. 21. Certainly, task-related functioning (such as following instructions) at an average level would counterindicate a marked limitation. The ALJ was incorrect in his description of the evidence, however. It was not T.M.B.'s teacher who opined that T.M.B.'s ability to follow oral instructions was average—as discussed below, the teacher reported that T.M.B. had substantial difficulty in maintaining attention and completing tasks. *See* R. 176-83. Rather, the statement regarding following oral instructions was made by a speech pathologist who had examined T.M.B. *See* R. 174-75 (reflecting that an evaluation was done on September 12, 2012; twice-weekly treatment began October 4, 2012; and the form was completed on November 1, 2012). That opinion provides some support for the ALJ's determination of a less than marked limitation, but

the ALJ's misunderstanding of the source raises questions as to whether the opinion was properly weighed.[2]

    2. Opinion of Examining Psychologist Dr. Coyle

The ALJ also states in his explanation, ""[I]n September 2013, Dr. Coyle noted the claimant had poor attention and concentration." R. 21. The record shows that on September 18, 2013, Edward Coyle, PhD, conducted a psychological examination of T.M.B. at the request of T.M.B.'s pediatrician. R. 358. Dr. Coyle observed that T.M.B.'s attention span was brief and he appeared to lose interest in most activities quickly. R. 358-62. Dr. Coyle opined that T.M.B., due to global cognitive delays causing poor attention and concentration ability, would likely have problems completing many of the tasks children his age could handle easily. R. 360-61.

These observations and opinions indicate that T.M.B. was substantially limited in his ability to attend to and complete tasks. To the extent that the ALJ found that Dr. Coyle's remarks support a determination of a less than marked limitation in that domain, the ALJ did not adequately explain the basis for such a finding.

    3. Opinions of the Reviewing Consultants

The ALJ's finding of a less than marked limitation in the domain of attending to and completing tasks is primarily supported by the ratings given by two sets of reviewing consultants. In December 2012 and February 2013, Zane LaCroix, LSP (Speech-Language

---

[2] Defendant states that the speech pathologist also opined that T.M.B. "had a 'superior' ability to comprehend classroom discussions." Def.'s Br. (Doc. No. 21) at 3, 8 (citing R. 175). This is incorrect; the speech pathologist marked that she had "not observed" T.M.B.'s ability to comprehend classroom discussion. *See* R. 175.

Pathology), and Deborah Hartley, PhD (Psychology), completed a "Disability Evaluation." R. 66-67. In that document, Dr. Hartley rated T.M.B. as having a "Less Than Marked" limitation in "Attending and Completing Tasks." R. 66.[3] In April and May 2013, Alvin Smith, PhD (Speech-Language Pathology), Joan Holloway, PhD (Psychology), and Dr. Sen, DO (Pediatrics), completed a "Disability Evaluation" upon reconsideration of Plaintiff's application. R. 76-78. In that document, Dr. Holloway rated T.M.B. as having a "Less Than Marked" limitation in "Attending and Completing Tasks." R. 77.[4]

These ratings by the reviewing consultants facially support the ALJ's finding. Plaintiff asserts, however, that the consultants' ratings are themselves inconsistent with the medical evidence.

Neither Dr. Hartley nor Dr. Holloway (or the other listed reviewing consultants) examined T.M.B. in person. Therefore, the ALJ could credit their opinions "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the [claimant] become weaker"); *see also Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) ("It follows that if the

---

[3] In the "Evaluation" section for the "Attending and Completing Tasks" category, there is no entry for Speech-Language Pathology, indicating that Mr. LaCroix did not participate in the evaluation for this domain. R. 66. There is an entry for Psychology, indicating that Dr. Hartley determined the rating. *See id.*

[4] In the "Evaluation" section for the "Attending and Completing Tasks" category, there are no entries for Speech-Language Pathology or Pediatrics, indicating that Dr. Smith and Dr. Sen did not participate in the evaluation for this domain. R. 77. There is an entry for Psychology, indicating that Dr. Holloway determined the rating. *See id.*

7

ALJ relies heavily on [opinions of agency medical consultants] . . . the opinions must themselves find adequate support in the medical evidence."). The weight the ALJ may place on the opinions of nonexamining sources "depend[s] on the degree to which [these sources] provide supporting explanations for their medical opinions" and "the degree to which these medical opinions consider all of the pertinent evidence in [the record], including medical opinions of treating and other examining sources." 20 C.F.R. § 416.927(c)(3); *accord* SSR 96-6p, 1996 WL 374180, at *2.

In explaining their evaluations, Dr. Hartley and/or Dr. Holloway cited the following evidence:

- a questionnaire completed by T.M.B.'s teacher, indicating that T.M.B. "does not think for himself," "copies others['] work," and "gets side-tracked easily" (R. 66, 77; *see also* R. 153, 171, 178); and

- the report of an examining consultant, indicating that T.M.B. "is able to perform[] most age-appropriate grooming and dressing tasks," "has functional limitations in his learning abilities but his motor functioning appears normal," and has a working memory score of 71 (R. 66, 77; *see also* R. 276, 277, 278).

Some of the cited observations—including that that T.M.B. "is able to perform[] most age-appropriate grooming and dressing tasks" and "his motor functioning appears normal"—more reasonably relate to T.M.B.'s functioning in the domains of "Moving About and Manipulation of Objects" and "Caring for Yourself." R. 67, 78. In those domains, the reviewing consultants assessed T.M.B. as having "No Limitation." *See id.*

8

These observations do not reasonably appear to be relevant to T.M.B.'s ability to attend and complete tasks, however, and Dr. Hartley and Dr. Holloway did not explain how this evidence supports a rating of less than marked limitation in that domain. *Id*.

On the other hand, the cited observations that *are* clearly relevant to the domain of attending to and completing tasks—specifically, that T.M.B. "does not think for himself," "copies others['] work," "gets side-tracked easily," "has functional limitations in his learning abilities," and has a poor working memory—indicate a substantial limitation in T.M.B.'s ability in that domain. Dr. Hartley and Dr. Holloway did not explain how this evidence supports a rating of less than marked limitation in that domain. *See* R. 66, 77; *cf.* 20 C.F.R. § 416.926a(e)(2)(i) (prescribing that a "marked" limitation will be found in a domain "when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities").

Moreover, Dr. Hartley's and Dr. Holloway's rating of less than marked limitation in attending to and completing tasks is contradicted by other evidence in the record, including:

- the report from T.M.B.'s teacher, indicating that T.M.B. has difficulty focusing, completing work without careless mistakes, and working without distracting himself or others (R. 178);

- two function reports completed by T.M.B.'s mother, in which she identified limitations in T.M.B.'s ability to pay attention and stick with tasks (R. 153, 171);

9

- the report of examining psychologist Dr. Coyle, who as described above determined that T.M.B.'s global cognitive delays resulted in poor attention and concentration ability (R. 360-61).

Of particular relevance here is the ALJ's consideration of the questionnaire completed by T.M.B.'s teacher. As summarized by the ALJ, the teacher reported:

> [T]he claimant had a very serious problem with understanding school and content vocabulary, reading and comprehending written material, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and applying problem solving skills in class discussions. It was also reported the claimant had an obvious problem with focusing long enough to finish an assigned activity or task, carrying out multi-step instructions, completing work accurately without careless mistakes, working without distracting himself or others, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, and using adequate vocabulary and grammar. It was also reported he had an obvious problem with knowing when to ask for help, appropriately asserting emotional needs, and using appropriate coping skills; however, he had no problem with moving about and manipulating objects. Moreover, it was reported the claimant had speech problems and was slow in cognition.

R. 18-19 (citation omitted); *see also* R. 176-83. The ALJ gave "little weight" to the teacher's opinion because "it is not signed or dated." R. 19.

Social Security Ruling 06-3p provides guidance on consideration of opinions from nonmedical sources, including teachers. SSR 06-3p, 2006 WL 2329939, at *1, 2, 5-6 (Aug. 9, 2006). In weighing such opinions, the ALJ is to consider factors including:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- Any other factors that tend to support or refute the opinion.

*Id.* at *4-5. "Not every factor for weighing opinion evidence will apply in every case." *Id.* at *5. An ALJ is not required to expressly discuss the factors in his decision; rather, the "ALJ's decision is sufficient if it permits [the Court] to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quoting SSR 06-3p, 2006 WL 2329939, at *6).

Here, the ALJ did not consider *any* of these factors when discounting the teacher's opinion but relied solely upon the fact that the questionnaire was not signed or dated. R. 19. SSA procedures, however, specify that although a name is necessary, a signature is not required on a teacher questionnaire. *See* SSA's Program Operations Manual System ("POMS") DI 25205.030(C)(3) (Aug. 9, 2012).[5] Thus, the ALJ's assignment of little

---

[5] Even if a signature were required, the SSA—which appears to have requested and obtained the teacher questionnaire directly from T.M.B.'s teacher—would have had a responsibility to recognize that the questionnaire was incomplete and contact the source to complete it. *See* SSA's Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-5-62, 1994 WL 637389, *1 (Sept. 28, 2005) (discussing evidence from nonmedical sources and stating that "[t]he ALJ . . . must review all of the evidence in the record before the hearing to determine whether it is sufficient for a full and fair inquiry into the matters at issue" and further stating that SSA staff "must undertake appropriate development" if the review indicates that additional evidence is needed); HALLEX I-2-5-28(C) (Aug. 29, 2014) (discussing when evidence requested by the SSA is incomplete and stating that SSA staff "will contact the source again to determine if additional evidence is available").

weight to the opinions in the teacher questionnaire is legally flawed in that it relies on an irrelevant issue and does not reflect proper consideration of the required factors.[6]

The rationale provided for Dr. Hartley's and Dr. Holloway's opinions that T.M.B.'s limitation in attending to and completing tasks is less than marked does not "find adequate support in the medical evidence." *See Lee*, 117 F. App'x at 678. Such opinion is not squarely supported by the information those doctors cite and is inconsistent with other evidence that neither they nor the ALJ distinguishes. As such, the opinions themselves are lacking and do not provide substantial evidence for the ALJ's determination regarding T.M.B.'s ability to attend and complete tasks. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1253-54 (10th Cir. 2002) (finding that consulting physician's opinion that was not supported by the record as a whole did not provide substantial evidence for the ALJ's decision).

---

[6] Moreover, the ALJ's finding is otherwise not supported by substantial evidence. The questionnaire states that the person who completed it was T.M.B.'s teacher for reading, language arts, social studies, science, math, and art, and taught T.M.B. from 7:45 to 10:20, 11:10 to 12:25, and 1:15 to 2:45 each school day. *See* R. 176. The questionnaire further reflects that at the time it was completed, the teacher had been teaching T.M.B. for at least 9 weeks. *See* R. 183 (teacher referencing "this past 9 weeks of school"); 18 (ALJ noting that the teacher questionnaire was completed on November 13, 2012), 176 (teacher stating that she had known T.M.B. "since August 19, 2012"). And, in addition to marking ratings, the teacher provided explanations for the ratings. *See e.g.*, R. 178. The ALJ's stated reason for discounting the teacher's opinion demonstrates a lack of substantial evidence for that aspect of his determination. *See Martinez v. Astrue*, 422 F. App'x 719, 726 (10th Cir. 2011) ("To be sure, the ALJ's failure to mention [the relevant ruling or factors] is not necessarily fatal; what is fatal however, is that the evidence cited by the ALJ in giving [the counselor's] opinion 'little weight' reveals that he did not have the relevant factors in mind, and more to the point, his findings are not supported by substantial evidence." (citation omitted)).

### 4. Conclusion

In sum, the ALJ articulated three reasons for his determination that T.M.B. has less than marked limitation in attending and completing tasks. Each of those three reasons, however, was faulty. Accordingly, substantial evidence does not support the ALJ's step-three finding that T.M.B. has less than marked limitation in the domain of Attending and Completing Tasks.

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Judgment will issue accordingly.

ENTERED this 8th day of September, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE